UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| IN RE | ) |
| | ) Bankruptcy Case |
| TIFANI ANNE DRESCHER, | ) No. 12-64729-tmr7 |
| | ) |
| | ) MEMORANDUM OPINION |
| Debtor. | ) |

This matter came before the Court at a final hearing held on June 19, 2013, on Trustee's objections to Debtor's claimed exemptions. In addition to separate memoranda in support of their positions, the parties filed stipulations as to issues, facts, and exhibits. At the final hearing, they supplemented the record with additional exhibits, testimony, and argument. Following the hearing, the matter was taken under advisement. This memorandum constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52 made applicable through Federal Rule of Bankruptcy Procedure (FRBP) 7052.

**Procedural History:**

In her bankruptcy schedules, Debtor listed cash on hand and funds in a credit union savings account and claimed them all as either exempt wages or exempt student loan assistance. She also claimed her $400 miscellaneous exemption. Trustee timely objected to the claimed exemptions, to which Debtor timely requested a hearing. After amendments to the schedules and the claimed exemptions, and pretrial conferences narrowing the issues, the parties seek resolution of the remaining disputes over the following assets:

MEMORANDUM OPINION-1

(1) credit union account balance of $5.48 plus interest of $.66;

(2) cash on hand held by Debtor on the date of filing in the amount of $2,403; and

(3) garnished funds of $1,764.11 returned by the creditor and held by Trustee.

The parties have stipulated that the following issues need resolution:

1. Which tracing method should be used to determine the source of funds for which exemption is claimed?

2. Is it possible for cash to be traced as a matter of law?

3. Did debtor adequately segregate funds sufficient to preserve claims for exemption?

4. To what extent are the funds returned by the garnishing creditor identifiable for exemption purposes?

**Facts:**

Debtor maintained a savings account at Oregon Community Credit Union. However, she normally paid her bills in cash because her credit was not good enough to open a checking account or obtain a debit card. She was enrolled as a student at Chemeketa Community College (Chemeketa), where she received student assistance in four forms–a federal subsidized Direct Loan, a federal unsubsidized Direct Loan, an Oregon Opportunity Grant, and a federal Pell Grant. Initially the assistance went directly to Chemeketa into a large account that pooled the assistance for all students. From that account, Chemeketa paid Debtor's tuition and other covered charges before sending her the net amount in checks. The disbursed funds were not designated by source or for payment of any specified expenses. Exhibit 11[1] shows Debtor's Chemeketa account with student assistance deposits, application to fees and charges, and a net disbursement to Debtor of $3,923.00. That amount corresponds to the total of Exhibits 3 ($3,817.00) and 6 ($106.00), deposited into Debtor's credit union account on September 25, 2012, and October 19, 2012, respectively. Aside from the Direct Loan funds, which could only be used for "authorized educational expenses," there were no specific restrictions on use of the assistance. Normally, Debtor deposited the assistance checks and used them for living expenses including other college-related costs.

---

[1] Unless otherwise noted, exhibits referenced are the exhibits contained in the Stipulation filed as Document #33 on April 11, 2013.

MEMORANDUM OPINION-2

While in school, Debtor worked part time at Smile Brands, Inc. and Plaid Pantries, Inc. Because no party argued to the contrary, the Court will assume the paychecks from these two employers were the appropriate net amounts (gross pay less amounts required to be deducted by law). The paystubs provided as Exhibits 5 (Plaid Pantries-$91.62) and 7 (Smile Brands-$248.56) are consistent with that assumption. Those paychecks were deposited on October 3, 2012, and October 25, 2012, respectively. Checks from both employers in the aggregate of $728.00 were deposited on October 10, 2012. Debtor had no other sources of income besides her student assistance and wages.

On October 29, 2012, a creditor garnished $1,764.11 from the credit union account. Panicked that additional funds necessary for her basic needs would soon be taken, later that day, Debtor withdrew $2,403 of the remaining account funds and put the cash in an envelope in her dresser. Two days later Debtor filed her Chapter 7 petition. At that time she still held the $2,403 in her dresser, as well as $5.48 in her credit union account, augmented by $.66 interest deposited that day. On her Statement of Financial Affairs, she listed the garnishment as property that was attached, garnished or seized within one year of the petition.

A few days after filing bankruptcy, Debtor challenged the garnishment in state court, claiming the funds were exempt as student assistance. As required by law, upon receipt of the challenge, the creditor deposited the money into the state court registry. After the creditor failed to respond to the challenge, the state court administrator returned the garnished funds to Debtor, who later delivered them by agreement to Trustee pending the outcome of the instant matter. No exemption determination was made by the state court before return of the garnished funds.

**Applicable Law**:

With certain exceptions not relevant here, on the date of a bankruptcy filing, all of a debtor's property becomes property of the bankruptcy estate. 11 U.S.C. § 541(a).[2] The Bankruptcy Code in turn allows a debtor to exempt certain property from the estate. § 522(b). The assets at issue in this case are, therefore,

// // //

---

[2] Unless otherwise noted, all subsequent statutory references are to Title 11 of the United States Code.

MEMORANDUM OPINION-3

property of the estate except to the extent Debtor has properly claimed them exempt. See Schwab v. Reilly, ___ U.S. ___, 130 S. Ct. 2652, 2657 (2010).

In general, the nature and extent of exemption rights are determined as of the bankruptcy petition date. Little v. Reaves (In re Reaves), 285 F.3d 1152, 1156 (9th Cir. 2002); Cisneros v. Kim (In re Kim), 257 B.R. 680, 685 (9th Cir. BAP 2000). While the Bankruptcy Code gives debtors the option of choosing the so-called bankruptcy federal exemptions under § 522(d) or those available under state law, § 522(b)(1), it permits a state to opt-out of the § 522(d) exemptions, thus limiting exemptions rights to those provided under state law, § 522(b)(2), and other "non-bankruptcy" federal exemptions. § 522(b)(3). When this case was filed, Oregon was an opt-out state. ORS 18.300 (2011).[3]

A party in interest, including the trustee, may object to a debtor's claimed exemptions. FRBP 4003(b)(1). The objecting party has the burden of proof to establish the debtor is not entitled to the claimed exemption. FRBP 4003(c). The objector must show by a preponderance of evidence that the debtor has not properly claimed the exemptions. Kelley v. Locke (In re Kelley), 300 B.R. 11, 17 (9th Cir. BAP 2003). A debtor's claimed exemptions are entitled to a presumption of validity. Carter v. Anderson (In re Carter), 182 F.3d 1027, 1029 n.3 (9th Cir. 1999). The initial burden of production to rebut the presumption belongs to the objecting party. Id. If rebutted, the burden of production shifts to the debtor to "to come forward with unequivocal evidence to demonstrate that the exemption is proper." Id. "The burden of persuasion, however, always remains with the objecting party." Id.

Debtor has claimed: 1) the Oregon wildcard exemption; 2) the Oregon wage exemption; and, 3) the federal student assistance exemption.

// // //

// // //

// // //

---

[3] Oregon has recently opted back in, amending ORS 18.300 to allow debtors to choose between the Oregon and § 522(d) exemptions, ORS 18.300(1)-(2) (2013), in cases filed on or after July 1, 2013. 2013 Or. Laws ch. 597, §§ 5-6. The amended statute does not apply in the case at bar.

MEMORANDUM OPINION-4

Oregon Wildcard Exemption:

ORS 18.345(1)(o)(2011),[4] the so-called "wildcard" or "pourover" exemption, allows a debtor to exempt up to $400 in any personal property, so long as the exemption is not used to increase the amount of any other exemption. The "wildcard" applies, among other things, to cash or cash equivalents. In re Wilson, 22 B.R. 146 (Bankr. D. Or. 1982).

Oregon Wage Exemption:

ORS 18.385(1) provides that 75% of an individual's "disposable earnings" are exempt from execution. "Disposable earnings" are "that part of earnings of an individual remaining after the deductions from those earnings of any amounts required to be withheld by law." ORS 18.375(1). "Earnings," in relevant part, means "compensation paid or payable for personal services, whether denominated as wages . . . or otherwise . . . ." ORS 18.375(2). Once deposited in a bank account, the disposable earnings remain exempt so long as they are "reasonably identifiable," ORS 18.348(1), up to an aggregate of $7,500 in earnings and other specified exempt sources. ORS 18.348(2). Upon deposit, the exemption attaches to the same extent (75%) as before deposit. In re Platt, 270 B.R. 773, 776 (Bankr. D. Or. 2001). Commingling of exempt and non-exempt funds in the account does not affect the ability to reasonably identify the exempt portion. ORS 18.348(4). For purposes of identifying exempt funds, first in, first out (FIFO) accounting principles apply. Id.

What if the disposable earnings at some point are reduced to cash? Trustee urges that as a matter of law, cash cannot be exempted on any basis other than the Oregon wildcard. The gist of his argument is that "cash" is a separate species of property controlled by a specific exemption (i.e. the wildcard), much as vehicles, jewelry, and musical instruments are controlled by specific exemptions. See ORS 18.345(1)(a)-(b), (d). This argument however oversimplifies the analysis by incorrectly focusing on the form of the asset claimed exempt rather than the statute granting the exemption.

// // //

---

[4] The statute was re-designated ORS 18.345(1)(p) effective July 1, 2013. 2013 Or. Laws ch. 597, §§ 5-6.

MEMORANDUM OPINION-5

When interpreting an Oregon statute, the court must attempt to determine the legislature's intent. State v. Gaines, 346 Or. 160, 165, 206 P.3d 1042, 1047 (2009). The first place to look in doing so is the statute's text and context. Id. at 171, 206 P.3d at 1050.[5] Examining the statute's text, ORS 18.385(1) protects 75% of disposable earnings. It extends that protection not only to earnings "payable" but also to those "paid." ORS 18.375(2). It does not limit the form the paid earnings might take. Trustee essentially argues a worker's earnings are protected if paid in a cash equivalent such as a check, direct deposit, or electronic card, but if paid in cash the protected earnings disappear. That argument has little to recommend it. Many workers get paid in cash. Many others, such as the one at bar, need to quickly reduce their paychecks to cash to pay bills because they are unable to open a checking account or obtain a debit card. The statute's text gives no indication the legislature intended to deny its protection to workers in the above scenarios.

What if cash claimed as exempt earnings has been run through a bank account? Here, statutory context is highly relevant. While ORS 18.385 has no express "traceable to" language, tracing is implied in the statutory scheme. ORS 18.348 protects exempt disposable earnings while in a bank account. But how does one know the initial deposit into the account consisted of such earnings? That requires tracing to the exempt source. Platt, 270 B.R. at 775 (recognizing ORS 18.348's predecessor only applied to "funds traceable to wages"). Given that Oregon exemption statutes are liberally construed, Childers v. Brown, 81 Or. 1, 5, 158 P. 166, 168 (1916), that same privilege to trace should be extended to funds once they've been withdrawn from the account. Such a rule would not create the slippery slope feared by the Trustee. The Court agrees that if a debtor uses earnings to purchase tangible assets like vehicles, appliances, or jewelry, or even intangible assets like stock, bonds, or notes, the wage exemption would not extend to the purchased asset. However, in our society, people work for money. It would truly be anomalous to hold that just because that money is run through a bank account, it loses its exempt status.

---

[5] The court also should examine any legislative history proffered by the parties and give it whatever weight it deems appropriate. Gaines, 346 Or. at 171–172, 206 P.3d at 1050–1051. Here, the parties have not proffered any legislative history.

MEMORANDUM OPINION-6

That said, the cash out of the account must be traced. ORS 18.348(4) provides a tracing method for the funds while in the account, and conversely, identifies those withdrawn. Once withdrawn however, the Court acknowledges there may be certain proof difficulties tying the cash to earnings. In that context it may be appropriate to hold the exemption's presumptive validity rebutted and put the evidentiary burden on the debtor to come forward "with unequivocal evidence," Carter, 182 F.3d at 1029 n.3., the cash derived from disposable earnings. See In re McFarland, 481 B.R. 242, 248 (Bankr. S.D. Ga. 2012) (debtor has burden to trace exempt funds to an exempt source). As explained below, the Court need not at this juncture decide whether a debtor must adduce evidence that the exact same dollars withdrawn from the account are the ones claimed exempt, or whether some alternative tracing method would suffice.

Federal Student Assistance Exemption:

Although Oregon law does not protect student financial aid, federal non-bankruptcy law does, exempting federal student assistance and property traceable thereto. 20 U.S.C. § 1095a(d) (subject to exception for certain student loan debts).[6] Because dollars are fungible, in many cases "'[t]he goal of 'tracing' is not to trace anything at all . . . but rather [to] serve[] as an equitable substitute for the impossibility of specific identification.'" In re Burke, Case No. 305-31572, p.7 (Bankr. D. Or. August 2, 2005) (J. Brown) (quoting United States v. Henshaw, 388 F.3d 738, 741 (10th Cir. 2004) (citations omitted)). Courts must use alternative or multiple methods of tracing and "exercise case-specific judgment to select the method best suited to achieve a fair and equitable result on the facts before them." Id.; see also In re Perkins, 2011 WL 4458961, *4 (Bankr. N.D. Ohio 2011) (same, as to tracing federal student assistance). Like exempt

---

[6] 20 U.S.C. § 1095a(d) provides as follows:

> Except as authorized in this section, notwithstanding any other provision of Federal or State law, no grant, loan, or work assistance awarded under this subchapter and part C of subchapter I of chapter 34 of Title 42, or property traceable to such assistance, shall be subject to garnishment or attachment in order to satisfy any debt owed by the student awarded such assistance, other than a debt owed to the Secretary and arising under this subchapter and part C of subchapter I of chapter 34 of Title 42.

MEMORANDUM OPINION-7

earnings, if federal student assistance is deposited in a bank account: 1) it remains exempt so long as "reasonably identifiable," ORS 18.348(3); 2) commingling does not affect identifiability, ORS 18.348(4); and, 3) FIFO accounting principles apply. Id.[7] The $7,500 limitation does not apply. ORS 18.348(2).

Again, what of cash derived from the assistance? Like a state statute, the court is directed first to a federal statute's text. United States v. Alvarez, 511 U.S. 350, 356, 114 S. Ct. 1599, 1603 (1994). Here, unlike the Oregon wage exemption, the statute specifically includes "property traceable to" the assistance awarded, and nowhere does it exclude cash as an asset to which the assistance can be traced. 20 U.S.C. § 1095a(d). Thus, cash may be claimed exempt so long as it is traced to the assistance. See Brindle v. Arata, 940 N.E.2d 320, 322 (Ind. Ct. App. 2010) (nothing in statute's plain language terminates its protection when the assistance is deposited in a bank account "or otherwise").

Exemption Claims In Recovered Garnished Funds:

Under the Oregon garnishment statutes, a debtor may challenge a garnishment as a means to claim the garnished property is exempt. ORS 18.700(1). If so challenged, the garnishor must send to the trial court administrator all amounts it receives, ORS 18.705(1), which the administrator must retain until a decision is rendered. ORS 18.700(3). If a challenge is ultimately upheld, the administrator must return the exempt funds to the debtor. ORS 18.712(1).

The parties here appear to concede that so long as the garnishment was subject to challenge, Debtor had an interest in the garnished funds, such that they became estate property upon the Chapter 7 petition's filing. In general, if a third party holds estate property, that party must deliver it to the trustee. § 542(a). Even if the garnished funds were not considered estate property upon the petition's filing, § 550(a) permits a trustee to recover any number of avoidable transfers, such as a preferential transfer under § 547.

// // //

// // //

---

[7] The Court need not decide if ORS 18.348(4)'s dictate to use FIFO principles must give way to the federal statute's more generic "traceable to" language, which may or may not allow for more flexible tracing rules. Here, the parties have agreed that FIFO is the appropriate rule for the federal assistance in the account.

Section 522(g) allows a debtor to claim exemptions in funds the trustee recovers under §§ 542 or 550, unless the debtor voluntarily transferred the (now recovered) property or concealed it. § 522(g)(1)(A)-(B). In this context, it is axiomatic that a garnishment is an involuntary transfer.

**Application of the Law to the Facts:**

Exhibit 1 provides the details of Debtor's account including deposits, withdrawals, and running balances. Prior to September 25, 2012, the account contained $905.56, consisting of an $892.13 deposit on September 12, 2012, and a $77.64 deposit on September 18, 2012, minus certain withdrawals. The exempt nature of those funds cannot be determined because no evidence was adduced as to their source. In any event, under the FIFO analysis required by ORS 18.348(4), those funds were depleted by withdrawals on September 25, 2012 ($250), September 29, 2012 ($500), and October 3, 2012 ($155.56).[8]

The next funds to be used came from a $4,492.52 deposit on September 25, 2012, consisting of $3,817.00 in student assistance and $675.52 in net wages. See Exhibits 3 and 4. Both the student assistance and wages consisted of exempt and non-exempt components and it "appears logical and reasonable" to allocate them on a percentage basis to apportion the exempt funds. See Burke, at p.7.[9] Of the student assistance, 87.31% ($3,332.62) was attributable to exempt federal assistance.[10] Of the net wages, 75%

---

[8] The $155.56 was out of a total deposit of $500, leaving $344.44 to be applied against the deposit made on September 25, 2012-see below).

[9] Debtor concedes she made no effort to specifically segregate any exempt funds so as to come within the "recipient-directed" approach to tracing. See In re Glanville, 2011 WL 4830027, *3 (Bankr. D. Or. 2011) (under ORS 18.345(1)(n), a debtor may protect the earned income credit portion of a federal income tax refund by immediately segregating it).

[10] According to Exhibit 2, Debtor's total student assistance for Fall 2012 was $5,125 consisting of $1,125 in a subsidized federal Direct Loan, $1,500 in an unsubsidized federal Direct Loan, $650 in an Oregon Opportunity Grant, and $1,850 in a Pell Grant. The Direct Loans (both subsidized and unsubsidized), and the Pell Grant, are types of federal student assistance, 20 U.S.C. § 1087a (Direct Loans); 20 U.S.C. § 1070a (Pell Grants), which are exempt under 20 U.S.C. § 1095a(d). The Oregon Opportunity Grant does not qualify, because it is not a federal student assistance program. Thus, 87.31% ($4,475 of $5,125) was exempt student assistance, and 12.69% ($650 of $5,125) was not. The Court will continue to use these percentages when tracing the student assistance.

MEMORANDUM OPINION-9

($506.64) was exempt. Thus, using a pro-rata allocation, the September 25, 2012, deposit consisted of $3,839.26 (85.45%) in exempt wages and federal assistance, and $653.26 (14.55%) in other funds. Of the other funds, 74.14%[11] ($484.32) consisted of monies attributable to the Oregon Opportunity Grant, which to the extent they were unspent as of the petition date, were eligible for Oregon's wildcard.[12]

Once in Debtor's account, the above percentage allocations were not affected by commingling, and, as the statute instructs, FIFO accounting methods must be used to trace the funds. ORS 18.348(4). In that regard, Debtor made the following post September 25th withdrawals:

$344.44-10/3/12 (see n.8 supra);
$200.00-10/5/12;
$200.00-10/10/12;
$200.00-10/16/12;
$100.00-10/19/12;
$100.00-10/23/12;
$200.00-10/25/12;
$100.00-10/25/12;
$ 50.00-10/29/12.

Those withdrawals totaled $1,494.44, and reduced the funds representing the September 25th deposit to $2,998.08. Thus, when the account was garnished on October 29th, the entire garnished amount ($1,764.11) was attributable to the September 25th deposit. Using the above percentage calculations, the garnished funds consisted of $1,507.43 (85.45%) in exempt wages and federal assistance, and $256.68 (14.55%) in other funds. Of the other funds, $190.30 (74.14%) was attributable to the Oregon Opportunity Grant, and exempt under the wildcard. As Trustee conceded during argument, under Oregon and Bankruptcy

---

[11] The 74.14% is computed as follows: $3,817.00 (total student assistance attributable to the September 25th deposit) minus $3,332.62 (portion attributable to exempt federal assistance) equals $484.38 (portion attributable to Oregon Opportunity Grant) divided by $653.26 (total non-exempt wage and non-federal assistance funds).

[12] Debtor has already used $49.83 of her wildcard exemption on assets other than those at bar. Thus, she has $350.17 of the exemption still available. She has no reason to apply the wildcard to her federal student assistance because it is all exempt. And, while 25% of her wages are non-exempt, the wildcard cannot be used to increase the wage exemption beyond the 75% permitted, In re Langley, 22 B.R. 137 (Bankr. D. Or. 1982), as that would be using it to "increase the amount of any other exemption. ORS 18.345(1)(o) (2011). Thus, the Oregon Opportunity Grant funds are the wildcard's proper target.

MEMORANDUM OPINION-10

law, the above percentages followed the garnished funds from the garnishor to the trial court administrator to Debtor and ultimately to Trustee. See ORS 18.705(1); ORS 18.700(3); § 522(g)(1).

After the garnishment, Debtor immediately withdrew $2,403 from the account. Using FIFO principles, these funds consisted of $1,944.23 in exempt wages and federal assistance, and $458.77 in other funds, computed as follows:

| Description | Total | Exempt | Other Funds |
|---|---|---|---|
| 9/25/12 deposit | $1,233.97[13] | $1,054.38 (85.45%) | $ 179.59 |
| 9/30/12 interest | $ 0.33 | $ 0.27 (82%)[14] | $ 0.06 |
| 10/3/12 wages | $ 91.62 | $ 68.72 (75%) | $ 22.90 |
| 10/10/12 wages | $ 728.00 | $ 546.00 (75%) | $ 182.00 |
| 10/19/12 student aid | $ 106.00 | $ 92.55 (87.31%) | $ 13.45 |
| 10/25/12 wages | $ 243.08[15] | $ 182.31 (75%) | $ 60.77 |
| Totals | $2,403.00 | $1,944.23 | $ 458.77 |

Of the other funds, $133.15 (74.14% of the $180.06 relating to the September 25th deposit), and 100% of the $13.45 relating to the October 19th deposit) (total $146.60), represents the Oregon Opportunity Grant and thus is exempt under the Oregon wildcard.

As discussed above, turning the $2,403 into cash did not as a matter of law disqualify it from the wage and federal student assistance exemptions. The funds remained proportionally exempt so long as they were traceable to federal assistance and disposable earnings paid. Even assuming Trustee has rebutted the presumption of validity, Debtor presented credible uncontradicted testimony that the exact same dollars she put in her dresser on October 29, 2012, remained there two days later when she filed bankruptcy.

---

[13] The $1,223.97 represents the previously unspent portion of the September 25th deposit ($4,492.52 minus $1,494.44 (pre-garnishment withdrawals) minus $1,764.11 (garnishment).

[14] The Court has based the exempt/other funds interest split on the total confirmed deposits made from September 25, 2012, through October 25, 2012. Based on those calculations, a blended rate of 82% of the interest is exempt. However, because the amount of interest involved in this case is de minimis, the Court does not intend that its holding establish any type of precedent as to the exemptibility of interest under the wage and student assistance exemptions.

[15] The October 25th deposit was actually $248.56. The $5.48 not applied to the October 29th withdrawal remained in the account when the bankruptcy petition was filed.

MEMORANDUM OPINION-11

The October 29th cash withdrawal left a $5.48 balance in Debtor's account, consisting wholly of the October 25, 2012, wages deposit. Thus of the $5.48, 75% ($4.11) is exempt. Adding in the October 31, 2012, interest payment of $0.66[16] at the blended rate of 82% exempt ($.54), yields a total of $4.65 exempt in the account as of the filing.

**Conclusion:**

Of the total $4,173.25 at issue, Debtor is entitled to exempt $3,792.61 ($2,090.23 of the cash on hand as of the petition, plus $1,697.73 of the returned garnished funds, plus $4.65 of the funds in the credit union account as of the petition). The $380.64 remainder is not exempt. Trustee shall retain the non-exempt portion from the garnished funds he is holding, and promptly refund the balance to Debtor. Debtor's attorney should draft an order consistent with this opinion and submit it after circulating it to Trustee pursuant to LBR 9021-1(a)(2)(A). The Order should be tendered within ten days.

THOMAS M. RENN
Bankruptcy Judge

---

[16] Because the interest was paid on the date of the bankruptcy filing, it is all attributable to pre-petition property of the estate, subject to the same exemption analysis.

MEMORANDUM OPINION-12